ThanksUNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THEODUS ALANZO MORRISON, IV,        Case No. 14-10984

            Plaintiff,        Victoria A. Roberts
v.        United States District Judge

COMMISSIONER OF SOCIAL SECURITY,        Michael Hluchaniuk
        United States Magistrate Judge

            Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 15, 18)**

## I.    PROCEDURAL HISTORY

A.    Proceedings in this Court

On March 6, 2014, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of disability, disability insurance, and supplemental security income benefits. (Dkt. 4). This matter is before the Court on cross-motions for summary judgment. (Dkt. 15, 18). Plaintiff also filed a reply in support of his motion. (Dkt. 19).

B.    Administrative Proceedings

Plaintiff filed the instant claims on June 20, 2011, alleging that he became

1

disabled on July 23, 2010.  (Dkt. 11-2, Pg ID 44).  The claims were initially

disapproved by the Commissioner on October 10, 2011.  (Dkt. 11-2, Pg ID 44).

Plaintiff requested a hearing and on August 27, 2012, plaintiff appeared with

counsel before Administrative Law Judge (ALJ) Michael Dunn, who considered

the case de novo.  In a decision dated October 26, 2012, the ALJ found that

plaintiff was not disabled.  (Dkt. 11-2, Pg ID 44-55).  Plaintiff requested a review

of this decision and on January 24, 2014, the ALJ's decision became the final

decision of the Commissioner when, after the review of additional exhibits,[1] the

Appeals Council denied plaintiff's request for review.  (Dkt. 11-2, Pg ID 33-38);

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **GRANTED** in part, that defendant's

motion for summary judgment be **DENIED** in part, that the findings of the

Commissioner be **REVERSED** in part, and that this matter be **REMANDED** for

further proceedings under sentence four.

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).  Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was born in 1971 and was 39 years old on the alleged disability

onset date.  (Dkt. 11-2, Pg ID 46).  Plaintiff's past relevant work included work as

a general laborer, postal worker, truck driver, and greeter.  (Dkt. 11-2, Pg ID 46).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at

step one that plaintiff had not engaged in substantial gainful activity since the

alleged onset date.  (Dkt. 11-2, Pg ID 46).  At step two, the ALJ found that

plaintiff's degenerative disc disease in the lumbar spine with radiculopathy and

migraine headaches were "severe" within the meaning of the second sequential

step.  (Dkt. 11-2, Pg ID 46).  At step three, the ALJ found no evidence that

plaintiff's combination of impairments met or equaled one of the listings in the

regulations.  (Dkt. 11-2, Pg ID 46).  At step four, the ALJ found that plaintiff

could not perform his past relevant work.  (Dkt. 11-2, Pg ID 53).  The ALJ

concluded that plaintiff had the residual functional capacity to perform a reduced

range of sedentary work as follows:

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to perform sedentary work as defined
> in 20 CFR 404.1567(a) and 416.967(a), except that the
> claimant is limited to lifting and carrying up to 10 lbs.
> occasionally, and less than 10 lbs. frequently. The
> claimant requires a sit/stand option every 30 minutes,
> provided that the exercise of that option will not cause

3

the claimant to be off task more than 10% of the work day. The claimant requires a hand held assistive device at all times when walking, but not while standing in place at the work station. The claimant's contralateral upper extremities may be used to lift and carry up to the exertional limitations, and the claimant can push and pull as much as can be lifted and carried. The claimant should only occasionally operate foot controls with his right lower extremity. The claimant can only frequently handle and finger bilaterally. The claimant can occasionally climb ramps or stairs. The claimant should never climb ladders, ropes or scaffolds. The claimant can occasionally balance, stoop and crouch, and should never kneel or crawl. The claimant should not be exposed to unprotected height, hazardous machinery, excessive vibration, and extreme heat and cold. Due to medication side effects, the distracting nature of pain and the need to frequently change positions, the claimant's work should be limited to simple, routine and repetitive unskilled tasks, performed at SVP 1 or 2 (as defined in the dictionary of occupational titles). The claimant's work must be free of fast-paced production requirements with few, if any, workplace changes, and the claimant's work should involve only simple work-related decisions.

(Dkt. 11-2, Pg ID 48).  At step five, the ALJ denied plaintiff benefits because

plaintiff could perform a significant number of jobs available in the national

economy.  (Dkt. 11-2, Pg ID 54).

    B.    <u>Plaintiff's Claims of Error</u>

According to plaintiff, the ALJ erred by failing to explain his conclusion as

to the listing at all.  His opinion includes only the following vague reference to the

subject, rendered not as to the listing issue at all but instead as to the weight to be

accorded the opinions of plaintiff's treating physician:  "The undersigned does not

4

afford any weight to Dr. Rottenberg's assertion that the claimant met the requirements for disability under listing § 1.04, as this determination is reserved to the Commissioner." (Tr 19). While this determination is in fact reserved to the Commissioner, it has still been held that "a conclusion that a claimant does not meet the criteria of any listing," which fails to adequately explain why it has not been met is "beyond meaningful judicial review." *Dowles v. Barnhart*, 258 F.Supp.2d 478 (W.D. La 2003). Of course, anytime an ALJ fails to adequately explain the factual and legal bases for his decision, the Court cannot conduct a meaningful review of that decision. *See e.g.*, *Hyatt Corp v. NLRB*, 939 F.2d 361, 367 (6th Cir. 1991); *Consolidation Coal Co. v. McMahon*, 77 F.3d 898, 901 (6th Cir. 1996).

According to plaintiff, the ALJ did not indicate what evidence he did rely on in concluding that plaintiff had not met the listing in question, Listing 1.04A, 20 C.F.R. Part 404, Subpart A, Appendix 1, § 104A. He failed to address the fact that Dr. Rottenberg not only offered a conclusion as to whether the listing had been met, but also set forth the findings that supported that conclusion. (Tr 352-353). SSR 96-5p states that "the adjudicator looks to the treating source for medical evidence with which he or she can determine whether an individual's impairment meets a listing." Here, however, plaintiff says the ALJ simply refused to consider Dr. Rottenberg's opinions, without stating what they were or why they

5

were unacceptable.  As a result, this Court cannot determine why the ALJ

concluded the listing had not been met or medically equaled.  Without such an

analysis, a remand may be required even if substantial evidence did support the

result ultimately reached.  *Morehead Marine Services v. Washnock*, 135 F.3d 366,

375 (6th Cir. 1998).  This error, in combination with the failure to obtain an

opinion from a Commissioner-designated medical expert on the subject, should

result in the reversal of the ALJ's opinion.

 In his opinion, the ALJ noted that the opinions of a treating source are

entitled to substantial weight if "supported by sufficient medical data."  (Tr 19).

He then set forth the medical data in support of plaintiff's opinions, limiting that

analysis solely to the objective test results reported by Dr. Rottenberg:

> Here, the objective medical evidence regarding the
> severity of the claimant's impairments indicates, in sum,
> that the claimant has a moderate disc bulge at L4-L5,
> narrowing of the thecal sac, in the spinal canal from the
> L4(10F/2), evidence of sciatica and right radiculopathy
> at S1and L5 (8F/14 and 13F/13-14), and ulnar
> neuropathy across the claimant's left and right elbows.
> (5F/13-16).

(Tr. 19).  According to plaintiff, this evidence provides substantial objective

medical support for the conclusions of Dr. Rottenberg, and it is not even a

complete and accurate list of that objective medical support.  In that regard, the

evidence cited by the ALJ comes from an MRI, which demonstrates not a

"moderate disc bulge" but instead a "disc protrusion" at L4-5.  (Tr. 351).  It also

includes EMGs that provided positive results for both S1 and L5 radiculopathy,
and peripheral neuropathy.  (Tr. 323-324, 370-371).  In addition, two EMGs
confirmed not only ulnar neuropathy across both the left and right elbows, but also
severe carpal tunnel syndrome on the right and moderate to severe carpal tunnel
syndrome on the left.  (Tr. 296-297, 299-300).  And, x-rays revealed evidence of
L4-5 disc space narrowing, a transitional L5 segment with narrowing, and
degenerative changes involving the lumbosacral spine and sacroiliac joint.  (Tr.
379).  These x-rays also demonstrated osteoarthritic changes with inferior joint
space narrowing in plaintiff's right hip (Tr. 379), a problem plaintiff says the ALJ
scarcely mentioned and did not declare to be either a severe or nonsevere
impairment, representing further error.  In addition, Dr. Rottenberg ordered tibial
SEP testing.  One test revealed right peripheral slowing due to lumbosacral
radiculopathy (Tr. 327-328), while the other revealed the same findings on the
right.  (Tr. 329-330).  Thus, plaintiff asserts that Dr. Rottenberg had a wealth of
positive objective test results to support his conclusions, which should have
mandated that his resulting opinions be given significant, if not controlling,
weight.  Dr. Rottenberg saw plaintiff literally scores of times, and, according to
plaintiff, is the only expert of record who has any longitudinal view of plaintiff's
condition.

       Nevertheless, the ALJ placed substantial weight on the fact that Dr. Ahmad

7

in Dr. Rottenberg's office released plaintiff to return to work on March 24, 2011 (Tr. 258). However, plaintiff points out that it appears that the only treatment offered on that date was a lumbar epidural steroid injection; there does not seem to have been any accompanying physical examination conducted on this date. (Tr. 247, 259). As a result, this isolated opinion from a nonexamining doctor should not overcome the opinions of a long-term treater. It should also be recalled that, during March 2011, plaintiff was engaged in significantly limited employment, and was in the process of failing to even be able to perform that work. (Tr. 192). That being so, plaintiff asserts that this single notation should not be permitted to overcome years of findings and observations from Dr. Rottenberg, backed by dozens of examinations.

The ALJ also referred to a Function Report completed by plaintiff, which the ALJ indicated "provides that the claimant is able to prepare simple meals and do light housekeeping, including laundry and cleaning counters..." (Tr. 19). Plaintiff contends that, in reality, that report is far more limiting because he was limited to "[v]ery easy things like sandwiches and frozen dinners." (Tr. 222). And, with respect to housekeeping, he stated, "I am not able to do much of anything. I sometimes try and just put something in the laundry or wipe down the counter, something very easy." (Tr. 222). Even then, he stated that it might take him all day to do even these little things, because he had to sit or lie down and take

8

breaks.  (Tr. 222).  In any event, plaintiff contends that "put[ting] something in the laundry" or wiping down a counter scarcely constitutes "light housekeeping," and none of this discredits a suggestion by Dr. Rottenberg in a report to DHS that plaintiff needed help with meal preparation or laundry.  (Tr. 310).

Plaintiff argues that the ALJ improperly discarded the opinions of plaintiff's long-time treater in favor of the views of a one-time examiner who saw plaintiff on behalf of his employers' workers' compensation carrier (Dr. Matlen), a consultative examiner who did not have the benefit of the tests revealing plaintiff's carpal tunnel syndrome or ulnar neuropathy and who endorsed the need for limitations but did not set forth anything specific (Dr. Shah), and a State agency consulting physician who rendered opinions without actually examining plaintiff and who also lacked those same tests (Dr. Venema).  (Tr. 19-20).  As the Sixth Circuit noted in *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013), "[s]urely the conflicting substantial evidence must consist of more than the medical opinions of the nontreating and non examining doctors. Otherwise the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion." *Gayheart*, *supra*, at 377.

According to plaintiff, the ALJ's failure to properly observe and apply the treating source rule should result in the reversal of his decision.  That is

particularly so when the doctor's opinions would preclude plaintiff from competitive employment.  In that regard, Dr. Rottenberg reported that plaintiff could only occasionally lift 10 pounds (Tr. 349), not frequently as the ALJ stated in his RFC assessment (Tr. 16).  In addition, the ALJ provided for a sit/stand option every 30 minutes (Tr. 16), but Dr. Rottenberg additionally indicated that plaintiff could sit and stand for no longer than four hours a day total. (Tr. 348).  No hypothetical was posed to the VE incorporating these greater limitations, and the VE's responses to the incomplete hypotheticals posed therefore do not constitute substantial evidence to support the denial of benefits.  *Ealy v. Comm'r of Soc. Sec.*, 594 F3d 504, 516 (6th Cir. 2010).

Additionally, Dr. Rottenberg indicated that plaintiff could not engage in constant or repetitive gripping or squeezing with his right hand.  (Tr. 349).  The VE testified that this limitation would preclude plaintiff's performance of the bench assembler job.  (Tr 60).  Dr. Rottenberg also stated that plaintiff would need 10-minute rest periods every hour, and would have to lie down at times during the day.  (Tr. 349).  The VE testified that any unscheduled breaks would be entirely work-preclusive. (Tr. 64).  As a result, the adoption of Dr. Rottenberg's opinions requires an award of benefits.

Dr. Rottenberg also prescribed a cane for plaintiff (Tr. 262, 270), and indicated that plaintiff must use that cane even when working.  (Tr. 349).

10

According to plaintiff, the ALJ purported to include this limitation in his RFC assessment, but did so in an unduly limited fashion: "The claimant requires a hand held assistive device at all times when walking, but not while standing in place at the work station." (Tr 16). Plaintiff contends that there is no record support for the latter qualification. According to plaintiff, even the opinion of the consultative examiner, Dr. Shah, found persuasive by the ALJ, contradicts this finding. Dr. Shah reported that plaintiff would need a cane both to reduce his pain and also because he would fall without it. (Tr. 282). Plaintiff testified that the cane helped him with his balance and took weight off one side of his body. (Tr. 48-49), both considerations that would be as relevant while standing as while walking. As a result, he would require the cane not just as an assist while walking, but also as support when standing. Thus, plaintiff contends that because there is no substantial evidence to support a finding that plaintiff did not need a cane while standing, and because the ALJ failed to include the possibility of that sort of use in a hypothetical to the VE, the VE's response to the incomplete hypotheticals that were posed cannot serve as substantial evidence in support of the conclusion that plaintiff can perform other work. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). Plaintiff maintains that because it is defendant's burden to make that showing, 20 C.F.R. § 404.1560(d); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994), the ALJ's analysis cannot stand.

11

C.    Commissioner's Motion for Summary Judgment

The Commissioner first points out that, in order to sustain his burden of proving that he meets Listing 1.04A, plaintiff must establish all of the following elements:

> (1) A disorder of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in (2) Compromise of: (a) A nerve root (including the cauda equina) or (b) The spinal cord with (3) Evidence of nerve root compression (4) Characterized by (a) Neuro-anatomic distribution of pain, (b) Limitation of motion of the spine, (c) Motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by: (i) Sensory loss or (ii) Reflex loss and (d) If there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

According to the Commissioner, substantial evidence supports the ALJ's finding that plaintiff failed to sustain his burden of establishing all of these elements.

Specifically, Dr. Venema opined that plaintiff's impairments did not meet or medically equal Listing 1.04. (Tr. 91). The ALJ assigned "significant weight" to this opinion. (Tr. 20). The ALJ was entitled to do so because state agency physicians such as Dr. Venema are "highly qualified . . . experts in the evaluation of the medical issues in disability claims under the Social Security Act." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); *see also* 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6). Further, the Commissioner contends that this opinion is consistent

12

with and well supported by the record as a whole.  *See* 20 C.F.R.

§§ 404.1527(c)(4), 416.927(c)(4).  Because plaintiff does not address the elements

of Listing 1.04A, for present purposes it suffices to observe that (1) as the ALJ

states, Dr. Matlen examined plaintiff and reported that he had 90/90 straight leg

raising in the sitting position (Tr. 19, referring to Tr. 357) and no loss of sensation

(Tr. 20, referring to Tr. 357) and (2) Dr. Matlen further reported that plaintiff's

strength was generally intact, his strength was "excellent" in several areas, and he

did not have gross atrophy in the lower extremities.  (Tr. 356-57).  Plaintiff argues

that the ALJ failed to explain his finding concerning Listing 1.04A "at the relevant

step of the analysis."  The Commissioner contends that this argument is a red

herring, because the ALJ's discussion of Listing 1.04A elsewhere in the decision

(Tr. 19, 20) was sufficed to permit "'meaningful appellate review.'"  *See e.g.*,

*Johnson-Hunt v. Comm'r of Soc. Sec.*, 500 Fed.Appx. 411, 420 (6th Cir. 2012).

Plaintiff asserts that Dr. Rottenberg (1) opined that plaintiff met Listing 1.04A and

(2) "set forth the findings that supported that conclusion."  The Commissioner

maintains that neither of these assertions accurately characterizes the record.  First,

Listing 1.04 contains three alternative subsections (A, B, and C).  Although Dr.

Rottenberg opined that plaintiff's impairments met one of these subsections, he

did not specify which subsection he had in mind.  (Tr. 352).  Second, according to

the Commissioner, the "findings" that Dr. Rottenberg identified do not address the

elements of Listing 1.04A, let alone establish that plaintiff satisfied all of those elements. *Id*. Significantly, plaintiff acknowledges that Dr. Rottenberg's opinion about an unspecified subsection of Listing 1.04 concerns an issue that is reserved to the Commissioner. Pursuant to SSR 96-5p, available at 1996 WL 374183, at *3, the ALJ was precluded from according any special significance to that opinion, because doing so would have been "an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." It bears emphasis, however, that the ALJ explicitly acknowledged that opinion. (Tr. 19). For these reasons, the Commissioner submits that substantial evidence supports the ALJ's finding that plaintiff did not sustain his burden of establishing all the elements of Listing 1.04A.

The Commissioner next contends that the ALJ supportably declined to give controlling weight to Dr. Rottenberg's opinion. As a threshold matter, the Commissioner notes that the RFC finding incorporates several of Dr. Rottenberg's opined limitations. More fully, Dr. Rottenberg opined that plaintiff could occasionally lift up to ten pounds (Tr. 348); he required a cane for walking (Tr. 349; *see also* Tr. 262, 270, 281, 282, 344, 395); he needed to adjust his position hourly (Tr. 349); he could not push or pull leg controls with his right lower extremity on a sustained basis (Tr. 349); he could not use his right hand for fine manipulation on a sustained basis (Tr. 348); and he had to avoid repetitive or

14

prolonged bending.  (Tr. 349).  The ALJ incorporated all of these limitations in the
RFC finding.  (Tr. 16).

 With respect to Dr. Rottenberg's remaining opined limitations, the
Commissioner asserts that the ALJ properly found that "the longitudinal record
does not fully support Dr. Rottenberg's conclusions regarding the severity of
[Plaintiff's] impairments."  (Tr. 19).  First, as the ALJ states, Dr. Rottenberg's
opinion that plaintiff had limitations beyond those set forth in the RFC finding
appears to have been motivated by his sympathy for his patient:

> [T]he record reflects that [Plaintiff] was cleared to return
> to work by Dr. Ahmad on March 24, 2011 [Tr. 258], but
> that he was placed on leave with part-time restrictions by
> Dr. Rottenberg on May 4, 2012 [Tr. 295]. However, the
> record contains no objective clinical findings
> demonstrating that [Plaintiff's] symptomology had
> changed between March 24, 2011 and May 4, 2012.

(Tr. 19).  The Commissioner also points out that Dr. Ahmad treated Plaintiff, and
certified that plaintiff was under his professional care.  (Tr. 258, 259, 267-68, 337,
343, 370-71).  In addition, Dr. Rottenberg himself opined in early September 2011
that Plaintiff was able to resume his usual job.  (Tr. 332).

 Second, Dr. Venema reviewed the medical evidence of record and opined
that plaintiff did not have any limitations beyond those that the ALJ set forth in the
RFC finding.  (Compare Tr. 16 with Tr. 93-95).  According to the Commissioner,
the ALJ assigned "significant weight" to this opinion (Tr. 20) and the ALJ was

15

entitled to do so because state agency physicians such as Dr. Venema are "highly qualified . . . experts in the evaluation of the medical issues in disability claims under the Social Security Act." Further, this opinion is consistent with and well supported by the record as a whole. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). The Commissioner also argues that the ALJ correctly stated that Dr. Matlen examined plaintiff and reported that he was able to heel and toe walk without difficulty, he did not exhibit a limp, he had 90/90 straight leg raising in the sitting position, he had no loss of sensation, and he had no spasm in his lumbar spine. (Tr. 19 and 20, referring to Tr. 356-57). In addition, Dr. Matlen reported that plaintiff's strength was generally intact, that his strength was "excellent" in several areas, and that he did not have gross atrophy in the lower extremities. (Tr. 356-57). As the ALJ further correctly indicates, an MRI of plaintiff's spine revealed that he had only a "moderate disc bulge" at L4-L5 (Tr. 19, referring to Tr. 351).

According to the Commissioner, the ALJ marshals substantial evidence that plaintiff exaggerated the severity of his symptoms and that Dr. Rottenberg relied on that exaggeration in forming his opinion that plaintiff had limitations beyond those set forth in the RFC finding:

> Dr. Rottenberg reported that [Plaintiff] walked with an antalgic gait with mild foot drag on January 13, 2011 [Tr. 262]; however, on January 26, 2011, Dr. Matlen observed that [Plaintiff] did not exhibit a limp with gait

16

> [Tr. 356] . . . . [Plaintiff] also testified to having near
> constant pain which prevents him from sitting or
> standing too long in one position [Tr. 220; see also, e.g.,
> Tr. 37]; however, a physical therapy summary prepared
> on February 4, 2011, indicates that [Plaintiff] had
> *intermittent* pain of 4-5/10, and that [Plaintiff] was able
> to independently stand and walk for up to 30 to 45
> minutes at a time [Tr. 344]. . . . In addition, [Plaintiff's]
> Function Report indicates that he does not have
> difficulty using his hands [Tr. 225], and during his
> examination with Dr. Shah, [Plaintiff] was able to button
> his clothes, dress and undress without assistance, dial a
> telephone, make a fist, open a door, and write [Tr. 281].

Tr. 20 (emphasis in original); *see also* Tr. 19.

Dr. Rottenberg stated in mid-September 2011 that plaintiff required

assistance with meal preparation and laundry. (Tr. 310). According to the

Commissioner, the ALJ correctly states (Tr. 19) that there is some tension between

this statement and plaintiff's admission less than two weeks earlier that he was

able to do certain household chores, including preparing simple meals and putting

clothes in the laundry. (Tr. 222). Although plaintiff asserts that the tension

between these two statements is minimal (Pl's Mem. 20), this Court lacks

authority to re-weigh this evidence. *See e.g.*, *Brainard v. Sec'y of Health &

Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). In any event, in light of the

other substantial evidence, the Commissioner contends that plaintiff cannot sustain

his burden of establishing that he suffered any prejudice as a result of the manner

in which the ALJ weighed the conflicting statements concerning meal preparation

17

and laundry.  *See e.g.*, *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009).

Plaintiff criticizes the ALJ for failing to set forth a "complete" list of every pertinent fact contained in the record.  (Pl's Mem. 18).  Plaintiff does not cite any case in which any court in any jurisdiction has held an adjudicator to this impossible standard.  To the contrary, "it is well settled that '[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'"  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 507-08 (6th Cir. 2006).  For present purposes, according to the Commissioner, it suffices to observe that the ALJ repeatedly states that he carefully considered the entire record.  (Tr. 12, 16, 21).

Plaintiff asserts that Dr. Rottenberg "is the only expert of record who has any longitudinal view of [P]laintiff's condition."  (Pl's Mem. 19).  According to the Commissioner, this assertion does not accurately characterize the record.  In fact, Dr. Venema – a "highly qualified . . . expert[] in the evaluation of the medical issues in disability claims under the Social Security Act" – reviewed the medical evidence of record and opined that plaintiff did not have any limitations beyond those set forth in the RFC finding.  (Tr. 93-95).  According to the Commissioner, Dr. Ahmad likewise is a medical expert who had a longitudinal view of plaintiff's condition.  Plaintiff emphasizes that Dr. Rottenberg examined plaintiff on multiple

occasions, whereas Dr. Venema did not examine Plaintiff at all.  However, the
Commissioner points out that the Agency explicitly states in its official guidance,
however, opinions from reviewing State agency physicians such as Dr. Venema
"may be entitled to greater weight than the opinions of treating or examining
sources."  SSR 96-6p; 1996 WL 374180, at *3.

And, while plaintiff argues that Dr. Ahmad's opinion that Plaintiff could
return to work is an "isolated opinion from a nonexamining doctor," whereas Dr.
Rottenberg had the benefit of numerous "findings and observations," the
Commissioner points out that Dr. Ahmad and Dr. Rottenberg, however, were
partners in the same practice (*see e.g.*, Tr. 258), meaning Dr. Ahmad had access to
all of Dr. Rottenberg's contemporaneous treatment notes concerning his "findings
and observations."  Moreover, the Commissioner points out that Dr. Ahmad
explicitly certified that Plaintiff was under his professional care (Tr. 258), and the
transcript contains multiple records indicating that Dr. Ahmad treated plaintiff
(see, e.g., Tr. 259, 267-68, 337, 343, 370-71).  Although plaintiff acknowledges
that an adjudicator is entitled to reject a treating physician's opinion based on
conflicting substantial evidence, he quotes *Gayheart v. Comm'r of Soc. Sec.*, 710
F.3d 365, 377 (6th Cir. 2013), for the proposition that such evidence "'must
consist of more than the medical opinions of the nontreating and nonexamining
doctors.'"  When read in context, the Commissioner contends that it is apparent

19

that this quotation simply means that an adjudicator may not rely exclusively on other medical opinions, as opposed to the evidence underlying those opinions. Indeed, the *Gayheart* Court stated that the fatal defect in the decision in that case was that "the ALJ does not identify the substantial evidence that is purportedly inconsistent with [the treating physician's] opinions." *Gayheart*, 710 F.3d at 377; *see e.g.*, *Lott v. Colvin*, 2013 WL 5964411, at *9 (S.D. Ohio 2013) ("[T]he ALJ's misstep in *Gayheart* was that he 'does not identify the substantial evidence that is purportedly inconsistent with [the treating physician's] opinions.'"). According to the Commissioner, the facts of the instant case are materially different from the facts of *Gayheart* because, as discussed above and below, the ALJ explicitly identifies the substantial evidence that he found inconsistent with Dr. Rottenberg's opinion.

In the pertinent portion of the RFC assessment in the instant case, the ALJ found that plaintiff "requires a hand held assistive device at all times when walking, but not while standing in place at the work station." (Tr. 16). Plaintiff argues that "it is defendant's burden to make [a] showing" that this finding adequately accounts for his impairments. According to the Commissioner, this argument does not accurately characterize the governing law. To the contrary, it is plaintiff's burden to establish his RFC by demonstrating how his impairment impacts his functioning. *See* 20 C.F.R. §§ 404.1512(c), 416.912(c). Plaintiff

20

asserts that Dr. Shah's opinion "contradicts" the ALJ's finding that plaintiff did not require a cane in order to stand. According to the Commissioner, this assertion does not accurately characterize the record. In fact, Dr. Shah opined that plaintiff required a cane as a "walking aid" (Tr. 282), and the ALJ included that limitation in the RFC finding. (Tr. 16); *see also*, Tr. 281 (Dr. Shah's report that plaintiff could stand); Tr. 395 (report that plaintiff would "benefit from a standard cane to improve [his] gait"). In both of the documents that plaintiff cites in support of his assertions regarding the need for a cane, Dr. Rottenberg indicated that plaintiff required a cane for walking, not standing. *See* Tr. 270 (Plaintiff "needs heavy duty standard cane for difficulty walking"); Tr. 262 (cane required because plaintiff "has an antalgic gait"). Finally, plaintiff emphasizes his testimony that a cane "helped him with his balance." According to the Commissioner, this testimony is irrelevant. In reaching his finding that plaintiff was not "disabled" within the meaning of the Act, the ALJ relied on the VE's testimony that (1) a hypothetical person with plaintiff's background and assessed RFC could work as a telephone quotation clerk or as a surveillance-system monitor and (2) there are hundreds of thousands of such jobs in the regional and national economy. (Tr. 22, referring to Tr. 58-60). According to the Commissioner, balancing is "[n]ot [p]resent" and "does not exist" in any of these jobs. *See* Dictionary of Occupational Titles ("DOT") § 237.367-046, available at 1991 WL 672194 (telephone quotation

21

clerk); DOT § 379.367-010, available at 1991 WL 673244 (surveillance-system monitor).  For these reasons, the Commissioner respectfully submits that substantial evidence supports the ALJ's finding that plaintiff did not require a cane while standing in place at the work station.

D.     Plaintiff's Reply

In reply, plaintiff contends that while Dr. Venema may have opined as to whether or not plaintiff met the listing (Tr. 91), plaintiff's treating physician, Dr. Rottenberg, also offered such an opinion, which the ALJ did not consider.  (Tr. 19). While the determination of which of the two experts is more credible is left to the fact finder, there were no fact findings in connection with the listing issue. According to plaintiff, the analysis contained below the listing "heading" in the ALJ's decision is  a severe impairment analysis, which does not expressly mention any particular listing and contains authorities and findings clearly applicable instead to a severe impairment inquiry.  (Tr 15-16).  Thus, plaintiff contends that there is no listing analysis, no indication of what listing, if any, might have been considered, and no further consideration of the issue of medical equivalence beyond the ALJ's single-sentence statement.  (Tr 14-15).  Accordingly, plaintiff maintains that the ALJ's analysis is not sufficient because administrative agencies must explain their reasoning.  *See SEC v. Chenery Corp*., 332 U.S. 194, 196-97 (1947) (the basis for an agency decision "must be set forth with such clarity as to

22

be understandable" in order to enable judicial review); *HyattCorp. v. NLRB*, 939 F.2d 361, 367 (6th. Cir 1991) (the requirement that an agency state its reasons for a decision "imposes a discipline on the agency which prevents haphazard or arbitrary administrative action"). Absent some articulation of the reasoning for his finding on the listing issue, the ALJ's decision cannot stand.

Plaintiff says that the Commissioner now attempts to fill in the gaps, referring the Court to discussions of the opinions of Dr. Rottenberg and Dr. Venema in portions of the ALJ's opinions as to the appropriate RFC. (Tr 19-20). However, plaintiff contends that those findings are not sufficient. First, if Dr. Rottenberg's opinions are given the proper weight, they will control the analysis. Second, this analysis does not directly deal with the requirements of the listing or whether plaintiff has met it. Instead, the Court is left with defendant's recitation of the record and its contention that the listing has not been met. However, when reviewing an ALJ's findings and conclusions, the Court should not "accept appellate counsel's post hoc rationalization for agency action in lieu of [accurate] reasons and findings enunciated by the Board." *Hyatt Corp. v. NLRB*, 939 F.2d 361, 367 (6th. Cir 1991), quoted with approval in *Keeton v Comm'r of Soc. Sec.*, 2014 WL5151626 (E.D. Mich. 2014). Furthermore, defendant's argument fails to include any consideration of the issue of medical equivalence, which permits a finding of disability even where a claimant's impairment does not meet the criteria

of a listing.  20 C.F.R. § 404.1526(b); *see also Reynolds v. Comm'r of Soc. Sec.*, 424 Fed.Appx. 411, 415 n. 2 (6th Cir. 2011); *Foster v. Halter*, 279 F3d 348, 355 (6th Cir. 2001).  As a result, plaintiff contends that further analysis is required, and the case should be remanded for that purpose.

The Commissioner also challenged plaintiff's argument that Dr. Rottenberg was the only expert of record with a longitudinal view of plaintiff's condition, suggesting that the agency physician, Dr. Venema, also possessed such a view. Def's Mot., at 24.  However, Dr. Venema only read records and did not examine plaintiff once, let alone on numerous occasions over an extended period.  As a result, plaintiff contends that the Commissioner's argument fails to acknowledge the very reason for the creation of the treating source rule to begin with -- the idea that treating physicians are "likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 1527(c)(2).  According to plaintiff, Dr. Venema lacks this vantage point.

Defendant would also suggest that Dr. Rottenberg's partner, Dr. Ahmad, had the same vantage point, suggesting that the doctor treated plaintiff on several occasions.  In that regard, defendant cites various pages of the transcript

purportedly indicative of treatment by Dr. Ahmad.  However, a review of the record citations provided does not indicate that Dr. Ahmad ever actually examined plaintiff, but instead provided only epidural injections.  (Tr. 267-268, 337, 343).  In actuality, the only citation provided by defendant which corresponded to an actual examination was one that was in reality conducted by Dr. Rottenberg, not Dr. Ahmad.  (Tr. 370-371).  As a result, Dr. Ahmad also lacked the longitudinal vantage point enjoyed by Dr. Rottenberg.

Defendant also challenges plaintiff's interpretation of the Sixth Circuit's opinion in *Gayheart*, stating that "[w]hen read in context, it is apparent that this quotation simply means that an adjudicator may not rely exclusively upon other medical opinions, as opposed to the evidence underlying those opinions." According to plaintiff, even if this were an accurate reading of *Gayheart*, it must be recalled that neither Dr. Venema nor Dr. Ahmad examined plaintiff, so that there was no actual evidence underlying their opinions except the evidence produced by Dr. Rottenberg.  The reasoning therefore still applies.

Plaintiff largely relies on his prior argument with respect to his use of a cane, but points out that the Commissioner asks that this Court rely on the stated opinion of "a member of Dr. Rottenberg and Dr. Ahmad's practice," Def's Mot., at 27, but fails to acknowledge that said staff member was a physical therapist, and therefore was not an "acceptable medical source" as defined by 20 C.F.R.

25

§ 404.1527.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case

26

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

   If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508

28

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.   <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

29

continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.   Analysis and Conclusions

1.   Treating Physician Opinion

Plaintiff complains that the ALJ violated the treating physician rule in

31

evaluating the medical source opinion of his treating physician, Dr. Rottenberg. As for the other opinion evidence in the record, the ALJ gave significant weight to the opinion of the State agency medical consultant, Dr. Venema, and "appropriate weight" to the examining consultant opinion of Dr. Shah, to the extent they were consistent with the conclusions of Dr. Matlen (the worker's compensation insurance company physician) and the claimant's own testimony and function report.

As both parties acknowledge, and as the Sixth Circuit recently re-emphasized, greater deference is generally given to the opinions of treating medical sources than to the opinions of non-treating medical sources. *See Gayheart*, 710 F.3d at 375; *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir.2007). The opinion of a treating physician is the subject of a special rule: such an opinion must be given controlling weight if it is well-supported and not inconsistent with the record, and even if it is not given controlling weight, it is subject to a rebuttable presumption of deference. 20 C.F.R. §§ 404.1527(c), 4.927(c); *see also Massey v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 917, 921 (6th Cir. 2011) ("[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the

32

other substantial evidence in the case record.'").  The ALJ "is not bound by
conclusory statements of doctors, particularly where they are unsupported by
detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762,
773 (6th Cir. 2001).  However, an opinion that is based on the claimant's reporting
of her symptoms is not entitled to controlling weight.  *See Young v. Sec'y of
Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis*, 414
Fed. Appx. at 804 (a physician's statement that merely regurgitates a claimant's
self-described symptoms "is not a medical opinion at all.").

 "Closely associated with the treating physician rule, the regulations require
the ALJ to 'always give good reasons in [the] notice of determination or decision
for the weight' given to the claimant's treating source's opinion." *Rogers*, 486
F.3d at 406 (citing § 404.1527(d)(2)).  Indeed, SSR 82-62 requires that "[t]he
explanation of the decision must describe the weight attributed the pertinent
medical and non-medical factors in the case and reconcile any significant
inconsistencies.  Reasonable inferences may be drawn, but presumptions,
speculations and suppositions must not be used."  As a rule, the ALJ must build an
accurate and logical bridge between the evidence and his conclusion.  *See Wilson
v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544-56 (6th Cir. 2004) (finding the ALJ's
failure to make sufficiently clear why he rejected the treating physician's opinion
was not harmless error, even if substantial evidence not mentioned by the ALJ

may have existed to support the ultimate decision to reject the treating physician's opinion). Thus, "an ALJ's decision must articulate with specificity reasons for the findings and conclusions he makes." *Bailey v. Comm'r of Soc. Sec.*, 173 F.3d 428, 1999 WL 96920, at *4 (6th Cir. Feb. 2, 1999).

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the medical opinion is determined by a set of factors that guides the weight given to the medical opinion, including the treatment relationship, supportability, consistency, specialization, and other factors. *See* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Martin v. Comm'r of Soc. Sec.*, 170 Fed. Appx. 369, 372 (6th Cir. 2006).

The ALJ here stated that he discounted Dr. Rottenberg's opinions for the following reasons:

> The undersigned notes that a treating physician may, based upon a claimant's subjective complaints, express an opinion in an effort to assist the claimant because he or she sympathizes with that claimant for one reason or another. Here, the longitudinal record does not fully support Dr. Rottenberg conclusions regarding the severity of the claimant's impairments. Indeed, the claimant's September 7, 2011, Function Report provides that the claimant is able to prepare simple meals and do light housekeeping, including laundry and cleaning

34

counters (4E); yet on September 20, 2011, Dr.
Rottenberg prepared a statement indicating that the
claimant required assistance with meal preparation, and
laundry. More importantly, the record reflects that the
claimant was cleared to return to work by Dr. Ahmad on
March 24, 2011(2F/13), but that he was placed on leave
with part-time restrictions by Dr. Rottenberg on May 4,
2012. However, the record contains no objective clinical
findings demonstrating that the claimant's
symptomology had changed between March 24, 2011
and May 4, 2012. This leads to the conclusion that Dr.
Rottenberg relied heavily upon the subjective complaints
of the claimant in determining that the claimant could
only perform work on a part-time basis.  As such, Dr.
Rottenberg's conclusions regarding the severity of the
claimant's impairments are afforded only limited weight
in this determination.

In the view of the undersigned, the ALJ failed to "articulate with specificity

reasons for the findings and conclusions he makes" *Bailey*, 1999 WL 96920, at *4,

and failed to build an accurate and logical bridge between the evidence and his

conclusion. *See Wilson*, 378 F.3d at 544-56.

The medical evidence on which the ALJ relies to conclude that Dr.

Rottenberg's opinions are not supported and that they were made out of sympathy

is simply not logical.   For example, the ALJ relies heavily on the statement by Dr.

Ahmad that plaintiff could return to work in March 2011.  However, at that time,

plaintiff was only working part-time and was on and off work regularly

undergoing treatments, as indicated in the notes by Dr. Rottenberg and Dr.

Ahmad.  Nothing in Dr. Ahmad's statement suggests that plaintiff was permitted

35

or able to return to work full time, which he had not been doing for some time. The ALJ also ignored all the changes in plaintiff's work release between Dr. Ahmad's note in March 2011 and Dr. Rottenberg's conclusion in 2012 that he was restricted to very limited part-time work. According to the ALJ, nothing whatsoever changed in plaintiff's symptomology between March 2011 and May 2012. The ALJ's logic is faulty for two reasons. First, it assumes that plaintiff's condition remained entirely static during this time frame. It is clear from the medical records that it did not. In February 2011, plaintiff returned to work on reduced schedule and a part-time greeter position was created for him. (Tr. 37-38, 192). In March and April 2011, he continued to be on and off work based on his treatment needs. (Tr. 255, 258). Dr. Ahmad noted in April 2011 that he was "totally incapacitated" and needed to complete a series of epidural blocks before he could return to work. (Tr. 294). In August 2011, Dr. Rottenberg concluded that he needed restrictions of hourly positional adjustments and no lifting over 15 pounds through the end of 2011. (Tr. 255). In September 2011, Dr. Rottenberg concluded that he would resume his usual job. (Tr. 253). Again, this appears to be his restricted part-time job. Second, the ALJ's analysis assumes no change in plaintiff's condition. However, this too does not appear to be supported by the record. On October 11, 2011, plaintiff had a nerve study done which revealed right-sided S1 radiculopathy. (Tr. 324). Previously, the medical records revealed

36

only a chronic right sided L4-L5 radiculopathy.

In addition, the ALJ seemingly relied on Dr. Matlen's conclusions and observations only where they undercut Dr. Rottenberg's opinions. Inconsistently, the ALJ concluded that plaintiff required a cane to walk, but relied on Dr. Matlen's observation that plaintiff did not walk with a limp in January 2011 to conclude that Dr. Rottenberg's opinions were based on "sympathy." This is particularly troubling because the ALJ noted extensively at the hearing that opinions from worker's compensation insurance physicians were notoriously unreliable. (Tr. 61-63). Significantly, the consulting examiner on which the ALJ relied, Dr. Shah, found that plaintiff walked with a limp both with and without a cane, in September 2011. (Tr. 276). Moreover, it was observed in plaintiff's physical therapy records that he had an antalgic gait. (Tr. 395, 393). Dr. Matlen also concluded that plaintiff could return to work with limitations of not repetitive bending at the waist and lifting no more than 20-25 pounds. (Tr. 357). Dr. Matlen's opinions regarding plaintiff's limitations were clearly not adopted by the ALJ. Thus, the use of Dr. Matlen's observations to undermine Dr. Rottenberg's opinions seems suspect at best.

Further, even if Dr. Rottenberg's opinion was not entitled to controlling weight, it was still entitled to deference. 20 C.F.R. § 404.1527(d)(2)(I). As explained in SSR 96-2p:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

The ALJ failed to adequately address why Dr. Rottenberg's opinion should not be given controlling weight or even deference, as required by the regulations. 20 C.F.R. § 404.1527(d)(2); *see also Wilson*, 378 F.3d at 546. Further, the undersigned cannot excuse the ALJ's failure to sufficiently articulate good reasons simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion. *See Wilson*, 378 F.3d at 546 (making it clear that an ALJ's noncompliance with the rule is not excused simply because his decision is otherwise supported by substantial evidence on the record). Thus, the undersigned concludes that remand is necessary so the ALJ may re-evaluate the treating physician opinion and all supporting treatment evidence.

2.     Cane/Assistive Device

The parties do not dispute – and the ALJ concluded – that plaintiff requires

a cane for walking.  The dispute here is whether plaintiff requires a cane for standing.  "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information.").  Social Security Ruling 96–9p, 1996 WL 374185, at *7.  Here, plaintiff does not point to any medical evidence indicating that he requires a cane to stand.  To the contrary, all the medical evidence suggests that plaintiff only requires a cane for walking.  (Tr. 282, 270, 262, 395).  Thus, the record does not show that plaintiff's use of a cane would preclude him from performing the sedentary jobs identified by the VE.  *See also* Social Security Ruling 96–9p, 1996 WL 374185, at *7 ("[I]f a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.").

3.    Listing

Under the theory of presumptive disability, a claimant is eligible for benefits if he has an impairment that meets or medically equals a Listed Impairment.  *See Christephore*, 2012 WL 2274328, at *6.  The claimant bears the burden of establishing that his or her impairments match a Listing or are equal in severity to

a Listing. *See Harvey v. Comm'r of Soc. Sec.*, 2014 WL 5465531, at *4 (E.D. Mich. Oct. 28, 2014). To show that an impairment matches a Listing, the claimant must show that his or her impairments meet all of the specified criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). If a claimant's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. *Id.* To satisfy this burden, the claimant must offer medical findings equal to the severity of the requirements, and the findings must be supported by medically acceptable clinical and laboratory techniques. 20 C.F.R. § 404.1526(b).

When considering presumptive disability at Step Three, "an ALJ must analyze the claimant's impairments in relation to the Listed Impairments and must give a reasoned explanation of his findings and conclusions in order to facilitate meaningful review." *Christephore v. Comm'r of Soc. Sec.*, 2012 WL 2274328, at *6 (E.D. Mich. 2012), citing *Reynolds*, 424 Fed. Appx. at 416. An ALJ's failure to sufficiently articulate his Step Three findings is error. *See M.G.*, 861 F. Supp.2d at 858-59; *see also Reynolds*, 424 Fed. Appx. at 416; *Tapp v. Astrue*, 2011 WL 4565790, at *5 (E.D. Ky. 2012) (discussing reversal in a series of cases where the ALJ "made only a blanket statement that the claimant did not meet or equal a Listing section"). For example, in *Andrews v. Commissioner of Social Security*, 2013 WL 2200393 (E.D. Mich. 2013), plaintiff argued that the ALJ erred in failing to consider whether her cervical and lumbar spine impairments meet or

medically equal Listing 1.04A for "disorders of the spine." *Id.* at *11.  The ALJ

there simply stated:  "The claimant does not have an impairment or combination of

impairments that meets or medically equals one of the listed impairments[.]" *Id.*

The court noted that the ALJ explicitly found that plaintiff suffers from

degenerative disc disease and cervical spondylosis, and thus "should have

considered and discussed [plaintiff's] impairment(s) relative to Listing 1.04A,"

and "[h]er failure to do so constitutes legal error." *Id.* at *12.

In this case, the ALJ makes two mentions of the Listing.  First, the ALJ

concluded that plaintiff "does not have an impairment or combination of

impairments that meets or medically equals the severity of the listed impairments

in 20 CFR Part 404, Subpart P, Appendix 1..."  (Tr. 14-15).  Second, the ALJ

concluded that no weight should be afforded to Dr. Rottenberg's opinion that

plaintiff met the requirements for disability under Listing § 1.04, due to severe low

back pain, pinched nerve with disc protrusion, right sciatica and right side

radiculopathy because this is a determination reserved to the Commissioner.  (Tr.

19).  The Commissioner argues that plaintiff simply did not meet his burden of

showing that he met Listing 1.04 while plaintiff argues that the ALJ failed to

conduct any analysis of the issue whatsoever in the decision.

While plaintiff complains that the ALJ's analysis is insufficient, he does not

make a case that there is specific evidence in the record by which the ALJ could

41

have and should have concluded that he met the listing. Rather, plaintiff just points to Dr. Rottenberg's opinion, which, by itself, does not present a sufficiently detailed explanation as to how plaintiff's medical conditions and record evidence satisfied each and every requirement of the listing. Thus, reversal for the ALJ's failure to articulate at Step III is not warranted. However, since this matter is being remanded for the ALJ to reconsider the treating physician evidence as set forth above, the undersigned recommends that the ALJ also engage in a complete Step III listing analysis on remand.

## IV.  RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED** in part, that defendant's motion for summary judgment be **DENIED** in part, that the findings of the Commissioner be **REVERSED** in part, and that this matter be **REMANDED** for further proceedings under sentence four.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 13, 2015                    s/Michael Hluchaniuk
                                           Michael Hluchaniuk
                                           United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 13, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Howard D. Olinsky, Joshua L. Moore, Allen Duarte, Andrew J. Lievense, and the Commissioner of Social Security</u>.

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov
